## In re INDIAN MOTOCYCLE APPAREL AND ACCESSORIES COMPANY, INC., Debtor.

### Bankruptcy No. 93–41955–HJB.

United States Bankruptcy Court,
D. Massachusetts.

Nov. 29, 1994.

---

Joseph H. Reinhardt, Arnold Greenhut, Springfield, MA, for the petitioning Creditors.

David J. Noonan, Trustee in Bankruptcy.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is the "Application for Compensation and Reimbursement by Petitioning Creditors in Chapter 7" (the "Compensation Application") filed by petitioning creditors Hatchette Magazines, Inc., K III Magazine Corporation, Orchard Motorcycles, Inc., Pioneer Engineering & Manufacturing Company and the Conde Nast Publications, Inc. (the "Petitioning Creditors"), with respect to expenses incurred by them, as petitioning creditors, in the above case. Specifically, the Petitioning Creditors seek reimbursement for the legal expenses which they incurred on account of services rendered by Arnold Greenhut, Esq. ("Greenhut"), a sole practitioner ($7,155.00) and the law offices of Hendel, Collins & Newton ("HC & N") ($10,-112.49) in connection with the involuntary petition filed by the Petitioning Creditors against Indian Motocycle Apparel and Accessories, Inc. (the "Debtor").

## I. BACKGROUND

The Debtor is a Connecticut Corporation which, along with Indian Motocycle Co., Inc. ("Indian Company"), a Massachusetts corporation which is also a debtor in this Court (Case no. 93–41955), had, and may still have, rights to the mark "Indian" (the "Trademark") registered with the U.S. Patent and Trademark Office. That Trademark was previously used by the Debtor and/or Indian Company with respect to the manufacture of a well-known and well-regarded brand of motorcycles and associated accessory items. The ownership of the Trademark has for some time been the subject of heated litigation. Prior to the filing of the petition, the principal of the Debtor and Indian Company, Philip S. Zanghi II ("Zanghi"), caused the Trademark to be conveyed to yet another company, Indian Motocycle Manufacturing Company, Inc. ("Indian Manufacturing"), a Connecticut corporation. Thereafter, Indian Manufacturing was the subject of a receivership proceeding in the state of Connecticut.

On July 15, 1993, the Petitioning Creditors filed an Involuntary Petition against the Debtor and Indian Company in this Court, pursuant to 11 U.S.C. § 303. Because no answers were timely filed, an Order for Relief entered on August 16, 1993. However, on August 26, 1993, the Debtor and Indian Company filed motions to vacate the Orders for Relief and enlarge the time for filing answers, on the ground of allegedly defective service of the summonses. Also on August 26, 1993, an interim Trustee In Bankruptcy (the "Trustee") was appointed for both of the cases. On September 29, 1993, the Debtor and the Indian Company withdrew their respective motions to vacate and the Orders for Relief became final.

The cases continued in their complexity. Firstly, Zanghi refused to appear at the Section 341 meetings scheduled in the cases. Secondly, at some point prior or subsequent to the commencement of the case, Zanghi conveyed the stock of Indian Manufacturing to a creditor of Zanghi and, shortly thereafter, Indian Manufacturing filed a Chapter 11 case in the United States Bankruptcy Court for the Eastern District of North Carolina. The venue of the North Carolina case was subsequently (and after extensive negotiations and one or more hearings before the North Carolina Bankruptcy Court) transferred to this Court. Thirdly, because the Trustee has, on a variety of legal theories, claimed that the estates of the Debtor and/or

Indian Company have ownership rights in the Trademark, the Trustee has been extensively involved in negotiations relative thereto and in the Chapter 11 case of Indian Manufacturing. Furthermore, the Trustee has faced further challenges by other parties who have attempted to claim an interest in the Trademark or terminate the Trademark (and establish their own trademark).

The Compensation Application seeks reimbursement for expenses occasioned by the legal services of both Greenhut and HC & N for the period of June 1, 1993 through May 3, 1994. The services can be broken down into the following categories:

(1) consultation and advice to the Petitioning Creditors relative to the filing of the Involuntary Petition;

(2) preparation and filing of the Involuntary Petition, including effectuation of service of process;

(3) negotiations and appearances at hearings associated with the opposition by the Petitioning Creditors to the respective motions to vacate the Orders for Relief; and

(4) support and advice to the Trustee on the complexities of compelling cooperation from Zanghi and establishing rights of the Debtor and the Indian Company in the Trademark.

The services of Greenhut and HC & N are parallel, except that, the services of Greenhut appear concentrated on contact with the Petitioning Creditors and limited to review of filings prepared by HC & N, while the services of HC & N appear concentrated on proceedings before this Court with virtually no direct contact with the Petitioning Creditors.

Finally, the Compensation Application fails to allocate services rendered between the Debtor's case and the Indian Company case.

## II.  *DISCUSSION*

▮ Section 503(b)(3) of the Bankruptcy Code[1] supplemented by Subsection (b)(4) grants to petitioning creditors an administrative expense claim for expenses incurred by them in connection with the filing of an involuntary petition under Section 303. *See* 11 U.S.C. § 503(b)(3)–(4). Subsection (b)(4) is specifically devoted to expenses incurred by such creditors for services provided by an attorney or an accountant and sets forth compensation standards which mirror those standards se forth in 11 U.S.C. § 330(a). Therefore, it is fair to assume that Congress intended that the Court apply to applications under § 503(b)(4) the same standards the Court would apply to motions for compensation under § 330(a). *See In re William J. Stoecker,* 128 B.R. 205 (Bankr.N.D.Ill.1991); *see also* 3 COLLIER ON BANKRUPTCY § 503.04[4] at 503–51 (15th ed. 1991). However, while § 330(a) is instructive as to how compensation under § 503(b)(4) should be measured and calculated, the *scope* of compensable services under § 503(b)(4) is limited to that set forth in § 503(b)(3), namely services associated with filing of a petition under § 303.

▮ The services associated with the filing of an involuntary petition necessarily include consultation with petitioning creditors and coordination of their joint venture. Those services also include the actual preparation of the involuntary petition and effectuation of service of process. To the extent that the petition is contested by the alleged debtor, reimbursement of the petitioning creditors' expenses must also include legal

---

1.  Section 503(b)(3) and (4) provide in relevant part:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including— ...

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(A) a creditor that files a petition under section 303 of this title; ...

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, an reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. § 503(b)(3) and (4).

services necessary to meet the challenge. *See In re Crazy Eddie, Inc.,* 120 B.R. 273, 278 (Bankr.S.D.N.Y.1990); *In re Hanson Industries,* 90 B.R. 405, 410 (Bankr.D.Minn. 1988). However, once the Order for Relief enters and becomes final, legal services associated with the filing of the involuntary petition are completed. Additional services rendered after the entry of the Order for Relief are compensable *from the estate* only to the extent that counsel renders those services on behalf of the Trustee, after Court authorization. *See* 11 U.S.C. 327(a); *In re Pine Valley Machine, Inc.,* 172 B.R. 481, 487 (Bankr. D.Mass.1994).[2]

### a. The HC & N Request

■■■ The administrative expense request with respect to services performed by HC & N encompasses the period of June 1, 1993 through May 5, 1994. HC & N has supplied detail in compliance with Local Rule 34. HC & N consulted with Greenhut and the individual creditors, drafted the involuntary petition, effectuated service of process and challenged (successfully) the attempts by the Debtor and Indian Company to vacate the Order for Relief. The request, however, suffers from two infirmities. Firstly, the services for which reimbursement is sought cover a period well beyond the entry of the date on which the Order For Relief became final, September 29, 1993. With exception only for services related to the preparation of the instant Application, the services rendered after September 29, 1993 (associated primarily with support of the Chapter 7 Trustee's efforts) should be disallowed because they were *not* rendered in connection with the preparation and adjudication of the Involuntary Petition. *See Matter of Baldwin–United Corporation,* 79 B.R. 321, 337 (Bankr. S.D.Ohio 1987). Although the Petitioning Creditors emphasize that these subsequent services were requested by the Trustee (Application, Par. 11), a request by the Trustee for services is not the equivalent of court authorization. *See* 11 U.S.C. § 327(a); *In re Pine Valley Machine, Inc.,* 172 B.R. at 489. Secondly, the services are not allocated between the cases of the Debtor *and* the Indian Company. Because the creditor bodies of the respective cases may differ, it would be inappropriate for either the Debtor or the Indian Company to bear the entire burden of reimbursement for counsel's efforts in both of the cases. The Petitioning Creditors ask the Court to assess joint and several liability against the two estates. The Court, however, is unable to locate any precedent for such an assessment. Absent an alternative basis for division, the Court will assume that the effort in the respective cases was roughly equal. If that assumption is incorrect, the Petitioning Creditors or the Trustee should seek reconsideration of this Order.

Based upon the foregoing, the Petitioning Creditors are allowed an administrative expense claim, to be divided equally among the cases of the Debtor and the Indian Company, in the amount of $5,331.50 for services rendered by HC & N during the period of June 1, 1993 through September 29, 1993, and $339.33 for the out of pocket expenses of HC & N during that same period.

### b. The Greenhut Request

■■■ The administrative expense request with respect to services performed by Greenhut encompasses the period of June 1, 1993 through March 19, 1994. This request raises problems as well. Firstly, the division of labor between HC & N and Greenhut is troublesome. With HC & N speaking primarily to Greenhut and Greenhut speaking primarily to the Petitioning Creditors, it would appear that more time was expended than if HC & N had consulted with the Petitioning Creditors directly. Although the Petitioning Creditors are certainly entitled to consult with whomever they wish, such consultation should not be reimbursable from estate assets if the services are duplicative. *See In re Hanson Ind., Inc.,* 90 B.R. at 412. Based on the record in the instant case, it is difficult to tell whether the division of labor was in fact duplicative. The Court will grant to the Petitioning Creditors the benefit of the doubt, but cautions that henceforth on a simi-

---

**2.** Although the Petitioning Creditors might have had an additional argument under 11 U.S.C. § 503(b)(3)(D) if the case resided in Chapter 9 or 11, that subsection has no applicability in Chapter 7 cases, presumably because of the presence of the Trustee in Bankruptcy.

lar set of facts, such an application should affirmatively reflect why such duplication has not occurred. *See In re Hanson Industries, Inc.,* 90 B.R. at 412. Secondly, the request for reimbursement of the services rendered by Greenhut suffers from the same infirmities set forth above with respect to the HC & N request, namely that the reimbursement request encompasses services rendered after the Order for Relief became final and that the request is not divided between the two affected estates. With respect to the former problem, services entered after the Order for Relief became final will be disallowed. With respect to the latter, the Court will assume, subject to a timely filed motion for reconsideration, that the effort in the respective cases was roughly equal.

Based upon the foregoing, the Petitioning Creditors are allowed an administrative expense claim, to be divided equally among the cases of the Debtor and the Indian Company, in the amount of $2,085.00 for services rendered by Greenhut during the period of June 1, 1993 through September 29, 1993, and in the amount of $45.00 for the out of pocket expenses of Greenhut during that same period.

### III. *CONCLUSION*

The Compensation Application filed by the Petitioning Creditors is allowed as a Chapter 7 administrative expense claim in the total amount of $7,800.83, to be divided equally between the estates of the Debtor and the Indian Company. Separate Orders shall issue in accordance with this Memorandum in each of the affected cases.