**In re HOVDEBRAY ENTERPRISES, Debtor.**

**No. 10–61196–MER.**

United States Bankruptcy Court, D. Minnesota.

Sept. 17, 2013.

Alan B. Fish, Alan B. Fish, P.A., Roseau, MN, for Debtor.

Russell Law Office, Fergus Falls, MN, Velde Moore Ltd., Alexandria, MN, for David G. Velde, Trustee.

## MEMORANDUM DECISION

MICHAEL E. RIDGWAY, Bankruptcy Judge.

This case came on for hearing before the Court on July 30, 2013, on the verified

application for compensation and reimbursement of expenses filed by Roger J. Minch ("Minch"), attorney for petitioning creditor Variety Distributors, Inc. ("VDI"), and the objection of Border State Bank ("the Bank") thereto. Appearances were as noted on the record. This is a core proceeding under 28 U.S.C. § 157(b)(2) and this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334. The Court makes this memorandum decision based on all the files, records and proceedings herein, and pursuant to Fed. R. Bankr.P. 7052, made applicable to this contested matter by Fed. R. Bankr.P. 9014(c). For the reasons set forth below, the Bank's objection will be overruled in part and sustained in part.

## I. BACKGROUND

The salient facts are undisputed. VDI, a petitioning creditor, conceived of bringing an involuntary chapter 7 petition against the debtor and took the lead in convincing other creditors to join in the petition,[1] which was filed on October 11, 2010. The involuntary summons was issued on October 12, 2010. The petition was unopposed, and the Court's order for relief was entered on November 8, 2010. The debtor then prepared its schedules, statement of financial affairs, and other required documents.[2] David G. Velde was ultimately appointed trustee.[3]

VDI informed the trustee regarding the existence of a substantial, potential preference recovery action against the Bank in relation to the net proceeds of an inventory liquidation sale that the Bank had received during the preference period. In that regard, VDI noticed that the Bank had not filed its UCC–1 financing statement with the Minnesota Secretary of State until July 13, 2010, which was the first time that the Bank had perfected its lien in the debtor's inventory, accounts, fixtures, and proceeds.[4] Thus, perfection of the Bank's security interest had occurred during the 90–day preference period.[5]

Subsequently, the trustee commenced and prosecuted an adversary proceeding against the Bank,[6] which proved successful, and which, following a ministerial remand from the Bankruptcy Appellate Panel for the Eighth Circuit, ultimately resulted in a judgment in favor of the trustee and against the Bank in the amount of $244,227.11. *Velde v. Border State Bank (In re HovdeBray Enters.)*, 469 B.R. 829 (Bankr.D.Minn.2012), *aff'd in part, rev'd in part, and remanded*, 483 B.R. 187 (8th Cir. BAP 2012). The judgment became final (and has since been satisfied). The recovered preferential transfer is the largest asset of the bankruptcy estate.

1. VDI convinced Minch that an involuntary filing against the debtor had merit. In turn, Minch and VDI persuaded the other petitioning creditors to join in the petition.

2. The debtor retained its own attorney to accomplish these and other tasks.

3. Gene W. Doeling rejected his appointment as trustee on November 24, 2010; Mr. Velde was appointed trustee that same day.

4. Minch remarked at the hearing that he had initially found this fact rather difficult to believe, given that this was a loan guaranteed by the Small Business Administration.

5. The involuntary petition was filed on the 90th day of the preference period. *See* 11 U.S.C. § 547(b)(4)(A).

6. At the hearing, although Minch characterized his role vis-à-vis the trustee as being that of a "cheerleader," e.g., in relation to the trustee's prosecution of the adversary proceeding against the Bank, Minch acknowledged that he had never been employed by the estate.

## II. PROCEDURAL POSTURE

Minch requests allowance of compensation for attorney's fees in the amount of $7,380.00 [7] and reimbursement of expenses in the amount of $299.00 [8] incurred from August 23, 2010, through May 6, 2013.[9] Via Minch's application, VDI also seeks reimbursement of its expenses as a petitioning creditor in the amount of $3,880.44.

The Bank was the only objector; it argued that: 1) Minch should be reasonably compensated solely for the work performed in filing the involuntary petition; and 2) reimbursement of VDI's expenses should be limited to the $299.00 filing fee. In advance of the hearing, the parties filed supplemental briefing. The Court heard oral argument from the parties [10] and took the matter under advisement.

## III. ANALYSIS

When an involuntary petition results in an order for relief—as was the case here—the Bankruptcy Code provides that the petitioning creditors may request reimbursement of their "actual, necessary expenses," which, if allowed, will have administrative priority over the claims of other creditors. 11 U.S.C. § 503(b)(3)(A) ("After notice and a hearing, there shall be allowed administrative expenses ... including—... (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—(A) a creditor that files a petition under section 303 of this title."). In addition, the petitioning creditors may seek payment for "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A) ... of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant." 11 U.S.C. § 503(b)(4).

■ As a preliminary matter, "[i]t is well settled that these statutory provisions must be narrowly construed, in order to keep fees and administrative expenses at a minimum so as to preserve the estate for the benefit of all creditors." *In re Hanson Indus., Inc.*, 90 B.R. 405, 409 (Bankr. D.Minn.1988) (citing *Hassett v. Revlon, Inc. (In re OPM Leasing Servs., Inc.)*, 23 B.R. 104, 121 (Bankr.S.D.N.Y.1982)). Applicants under the above provisions bear the "burden of establishing their entitlement to an award by a preponderance of the evidence." *Hanson Indus.*, 90 B.R. at 409 (citing *In re 1 Potato 2, Inc.*, 71 B.R. 615, 618 (Bankr.D.Minn.1987)).

At this point, it must be noted that, given the facts and circumstances of this case, and except for § 503(b)(3)(A), no other subsection of § 503(b)(3) applies to VDI's request here. Consequently, Minch's entitlement to reasonable compensation under § 503(b)(4) must be assessed solely in relation to § 503(b)(3)(A). *See In*

---

7. Minch billed at an hourly rate of $225.00 for this matter.

8. This amount represents the filing fee for the involuntary case. The Bank concedes that reimbursement of this amount is appropriate.

9. Minch does not seek fees for the preparation of his application for compensation or for the time of his support staff. Minch also represented at the hearing that he has been paid in full by VDI for his services to it. Thus, to the extent Minch is awarded compensation or reimbursement via this application, it will inure to the benefit of VDI.

10. Robert Russell, III also appeared at the hearing on Minch's application and conveyed, *inter alia*, the trustee's belief that "the actions of the petitioning creditors were of extreme value to the estate."

*re Ameritex Yarn, LLC,* 378 B.R. 107, 113 (Bankr.M.D.N.C.2007) (petitioning creditors were not entitled to an award of fees under § 503(b)(4) absent a request for expenses under § 503(b)(3); "An entity cannot seek reimbursement of professional fees under § 503(b)(4) unless it previously qualified or concurrently qualifies for reimbursement of expenses under § 503(b)(3)."). *See also In re Celotex Corp.,* 227 F.3d 1336, 1341 (11th Cir.2000) ("Section 503(b)(4) expressly provides that allowable attorney compensation should be based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title ... This standard is identical to the standard in [11 U.S.C.] § 330(a)(1) which provides for attorney's fees for counsel to the bankruptcy trustee.").

 By way of focus, § 503(b)(3)(A) speaks in terms of the "actual, necessary expenses" incurred by a creditor that "files" an involuntary petition. 11 U.S.C. § 503(b)(3)(A). In turn, § 503(b)(4) speaks in terms of "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A)." 11 U.S.C. § 503(b)(3)(A). As one court succinctly put it:

> Petitioning creditors may seek the fees and costs directly related to preparing the involuntary petition and pursuing it to successful conclusion. §§ 503(b)(3)(A) and 503(b)(4); *Hanson Industries,* 90 B.R. at 410; *In re Crazy Eddie, Inc.,* 120 B.R. 273, 277–78 (Bankr.S.D.N.Y. 1990). Attorney's fees may be recovered under §§ 503(b)(3)(A) and 503(b)(4) for preparing and filing the involuntary petition, contacting other creditors to join in the petition, legal and factual research regarding the grounds for filing the case, and litigating whether an

order for relief should be entered. *In re Westek Georgia, LLC,* 317 B.R. 567, 570 (Bankr.M.D.Ga.2004) (quoting *Collier on Bankruptcy,* ¶ 503.10[2][b] at 503–61 (15th ed. rev.2004)). These amounts are subject to a reasonableness review mirroring that of § 330. *In re Stoecker,* 128 B.R. 205, 209 (Bankr.N.D.Ill.1991). The "cut-off point" for administrative expenses under §§ 503(b)(3)(A) and 503(b)(4) is the entry of an order for relief. *In re Hall,* 373 B.R. 788, 794–95 (Bankr.S.D.Ga.2006) (quoting *Collier on Bankruptcy,* ¶ 503.10[2][b] (15th ed. rev.)).

*In re Key Auto Liquidation Ctr., Inc.,* 384 B.R. 599, 605–06 (Bankr.N.D.Fla.2008). Thus, legal services associated with filing an involuntary petition are typically compensable if the services are directly related to the preparation and filing of the involuntary petition. Additionally, many courts have allowed compensation to cover litigation costs resulting from a contested (or otherwise problematic) involuntary petition. As one court put it,

> [t]o the extent that the petition is contested by the alleged debtor, reimbursement of the petitioning creditors' expenses must also include legal services necessary to meet the challenge. *However, once the Order for Relief enters and becomes final, legal services associated with the filing of the involuntary petition are completed. Additional services rendered after the entry of the Order for Relief are compensable from the estate only to the extent that counsel renders those services on behalf of the Trustee, after Court authorization.*

*In re Indian Motocycle Apparel & Accessories Co., Inc.,* 174 B.R. 659, 662–63 (Bankr.D.Mass.1994) (emphasis added). *See also Crazy Eddie,* 120 B.R. at 278 (quoting *Hanson,* 90 B.R. at 410) (agreeing that "the more reasoned approach ... is to

allow fees and costs incurred for work directly related to the preparation of the petition and, *if there is opposition*, to reasonable and necessary efforts to pursue the petition to successful conclusion ..." (emphasis added)). This interpretation "recognizes that an involuntary proceeding *can become* an expensive and aggressively contested matter." *Crazy Eddie*, 120 B.R. at 278 (emphasis added).

Turning to the circumstances of this case, there are three distinct components to the application at bar, the last two of which are contested by the Bank: 1) Minch's request for reimbursement of the filing fee for the involuntary petition in this case in the amount of $299.00; 2) VDI's request for reimbursement of the amounts identified on its "VDI Detail Fee/Billing List" in the amount of $3,880.44; and 3) Minch's request for attorney's fees in the amount $7,380.00.

■ First, as to Minch's request for reimbursement of the filing fee for the involuntary petition, it is, as the Bank concedes, allowable as a priority, administrative expense claim under § 503(b)(3)(A). *See Westek*, 317 B.R. at 569–70 (court is authorized to allow petitioning creditor an administrative expense claim for any statutory filing fees paid to initiate the involuntary case). Consequently, VDI (through Minch) is entitled to reimbursement in the amount of $299.00 for the filing fee.

■ Second, VDI requests reimbursement of the amounts identified on its "VDI Detail Fee/Billing List" in the amount of $3,880.44, purportedly for the time spent working on this case by its controller and credit manager. The Bank objects to these amounts as not being within the scope of § 503(b)(3)(A). The Court agrees. Here, because there is a virtual dearth of detail in support of the amounts requested by VDI, the "VDI Detail Fee/Billing List" simply does not pass muster under the reasonableness standard that mirrors § 330. Indeed, in response to the Court's query to Minch regarding the lack of detail in the "VDI Detail Fee/Billing List," Minch remarked, *inter alia*, that the document "is what it is." [11] Moreover, all of the work claimed was done by VDI's controller and its credit manager, both of whom are—as Minch confirmed at the hearing—salaried employees of VDI. In other words, and as Minch conceded at the hearing, the amounts sought by VDI simply were not out-of-pocket expenses for VDI. *See Westek*, 317 B.R. at 569–70 (noting that typical types of "expenses" incurred by a petitioning creditor are attorney's fees or the fees of an accountant). For these reasons, the Bank's objection to this component of the application is sustained and VDI's request for reimbursement of these amounts is not allowable as a priority, administrative expense under § 503(b)(3)(A).

■ Finally, the Court addresses the most controversial component of the fee application before it: Minch's request for attorney's fees in the amount $7,380.00. At the hearing, the parties agreed that the attorney's fees actually claimed by Minch through the date of the order for relief totaled $4,320.00.[12] The Bank also does

---

11. Prior to the hearing in this matter, VDI requested that Don Lantz, its COO, be permitted to testify by telephone, presumably to substantiate the amounts identified in the "VDI Detail Fee/Billing List." Although the Court denied this request for obvious reasons, the Court invited VDI to offer deposition testimony of Mr. Lantz (thereby allowing the Bank's counsel an opportunity for cross-examination) in lieu of live testimony in the courtroom, due to the fact that Mr. Lantz was either unable or unwilling to attend the hearing in this matter. VDI declined that invitation.

12. Notwithstanding the Bank's willingness to agree at the hearing that the $4,320.00 represented the attorney's fees that Minch was

not dispute that the services provided by Minch were indeed rendered in the time increments shown and values given on the dates indicated on Minch's time records.

As a preliminary matter, the Bank argues, in rather broad-brush fashion, that the amount actually claimed by Minch through the date of the order for relief are, as characterized by the Bank's attorney at the hearing, "a bit much," but that $3,000.00 would be reasonable compensation for those services. Other than the bare, unsupported assertion from the Bank, the Court has no basis to agree with the Bank in that regard. On the contrary, Minch's hourly rate of $225.00 is not excessive for an experienced attorney like Minch. Moreover, the Court finds that the time actually claimed by Minch through the order for relief was sufficiently related to the filing of the involuntary petition within the meaning of § 503(b)(4) via § 503(b)(3)(A). Indeed, and after a thorough examination of Minch's detailed time records, the Court is satisfied that Minch's services included "preparing and filing the involuntary petition, contacting other creditors to join in the petition, legal and factual research regarding the grounds for filing the case," as well as other services related to the preparation and filing of the involuntary petition. *Key Auto,* 384 B.R. at 605–06. The Court finds nothing unreasonable about the character or the amount of the fees actually claimed by Minch through the date of the order for relief. Moreover, it is evident to the Court that VDI and Minch were instrumental in

getting this involuntary case successfully launched, thus enabling the trustee to recover real value for the estate, which will inure to the benefit of the debtor's creditors.[13] Consequently, the Bank's objection to the amount of the fees actually claimed by Minch through the date of the order for relief is overruled; Minch will be allowed an administrative expense claim in this amount under § 503(b)(4) via § 503(b)(3)(A). This determination, however, does not end the Court's inquiry. Minch is also claiming fees for services performed *after* the order for relief.

 Under the majority view, and applying a plain reading of the statute, "a creditor may not be awarded compensation under Section 503(b)(3)(A) once the order for relief has been entered in a debtor's case." *In re Hall,* 373 B.R. 788, 795 (Bankr.S.D.Ga.2006) (collecting cases; services provided and costs incurred by petitioning creditors after entry of order for relief in involuntary case were not compensable as administrative expenses for "actual, necessary expenses" under § 503(b)(3)(A); "Following the plain text of the statute and the rationale of the majority of opinions on this subject leads me to conclude that the petitioning creditors are prohibited from receiving compensation pursuant to Section 503(b)(3)(A) for any of Applicant's services and costs incurred after the entry of the order for relief in this case."). Compensation is permitted for any further services only if prior court approval is sought, e.g., such as employment by the estate. *See, e.g., In re*

---

*requesting* through the date of the order for relief, the actual—non-charged off amount—through the date of the order for relief was $4,005.00, i.e., 17.8 hours multiplied by $225.00. Minch has "charged off" some of his fees, as reflected in a number of circled entries on his detailed time records. Minch confirmed at the hearing that he does not seek compensation for these entries, which

total $2,887.50. He also does not seek reimbursement of certain expenses totaling $205.70.

**13.** VDI is among the largest of the debtor's creditors. On June 1, 2011, Minch filed an unsecured claim on behalf of VDI in the amount of $116,409.09, representing goods sold to debtor. *See* Claim No. 5–1.

*Amanat*, 340 B.R. 713, 718 (Bankr. S.D.N.Y.2006) (services performed by attorneys for petitioning creditors, after entry of order for relief in involuntary chapter 7 case and appointment of chapter 7 trustee, in filing brief in opposition to debtor's appeal from order for relief when trustee, relying on stipulation with debtor to extend time for filing brief, did not do so, were not compensable as administrative expenses, because they had not been performed in connection with "filing" of petition and thus did not represent actual and necessary costs; citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 537–38, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004), which held that a bankruptcy court lacks discretion to award compensation to a debtor's attorney from estate funds "unless they are employed as authorized by § 327" and stating that the "Court's reasoning applies equally to the fees of a creditor who purports to assist the trustee as it does to the fees of a debtor's attorney who provides a service to the estate").

A minority of courts have allowed attorney's fees after the order for relief, almost always occasioned by extraordinary or unusual circumstances surrounding the involuntary case. *See, e.g., In re On Tour, LLC*, 276 B.R. 407, 419 (Bankr.D.Md.2002) (collecting cases; petitioning creditors were entitled to be compensated not just for fees and costs incurred in connection with the filing of involuntary chapter 7 petition, and not just for fees and costs incurred until order for relief was entered, but for all expenses incurred in bringing debtor into court, where there was "no evidence in the record that the interim chapter 7 trustee performed any duties in this case. The record does reflect, however, that after conversion to chapter 11, the U.S. Trustee filed a motion to reconvert the case back to chapter 7. This motion was the result of attending the second meeting of creditors, where it became

clear that the debtor had no management capabilities and had essentially done nothing in the case since the petition had been filed."); *In re Klein*, 328 B.R. 597, 599–600 (Bankr.M.D.Fla.2005) (while attorney for petitioning creditor would not ordinarily be entitled to compensation for services which attorney performed after the order for relief, court allowed attorney to recover for such services in assisting trustee with trustee's attempt to compel the cooperation of the debtor, given that attorney had acted in good faith, and that trustee had apparently accepted attorney's services).

Minch cites a number of cases in support of his argument that he should be entitled to attorney's fees incurred after the date of the order for relief, all of which are either distinguishable from the facts of the present case or are not persuasive. Minch argues that the court's decision in *1 Potato 2* supports his argument that he should be allowed compensation for services beyond the entry of the order for relief, because those services resulted in "tangible benefits to the estate." That case is different from this one. In *1 Potato 2*, the court was analyzing 11 U.S.C. § 503(b)(3)(D) in the context of a chapter 11 proceeding; accordingly, § 503(b)(3)(D) has no applicability to this chapter 7 case. *See 1 Potato 2*, 71 B.R. at 617–18. Moreover, § 503(b)(3)(A) has no benefit-to-the-estate requirement. *See* 11 U.S.C. § 503(b)(3)(A). Similarly, the facts in *Hanson* are not on par with the facts surrounding the present case because it involved "one of the most complex and difficult involuntary bankruptcy cases in this district." 90 B.R. at 406. In *On Tour*, the court approved *a portion* of an application for compensation made under § 503(b)(3)(A) for services performed after the entry of the order for relief. 276 B.R. at 407. That portion was approved, however, only after the court noted that the

debtor had not been responsive to court orders, the case lacked an actively participating trustee who could protect the interests of creditors, and the petitioning creditors by themselves were responsible for the effective administration of the debtor's case. *Id.* In light of its distinguishable facts and its being at odds with the majority of courts, *On Tour* is not persuasive. In *Klein,* the court permitted *some* of the requested compensation for services after the order for relief—which had been rendered without prior court approval—but only after the court had concluded that the attorney had acted in good faith and that the trustee accepted his services. 328 B.R. at 599–600. It is noteworthy, however, that the court in Klein prefaced the fee award by acknowledging that the "services rendered by [the attorney] and his paralegal after the Order for Relief ordinarily would not be compensable." *Id.* at 599. Indeed, the court in *Amanat* declined to follow *Klein,* instead electing to follow the majority position, i.e., granting compensation under § 503(b)(3)(A) only for work performed up to the point of entry of the order for relief. 340 B.R. at 715–18 ("In the context of this case, the Court has authority to award fees to the Petitioning Creditors under §§ 503(b)(3)(A) and 503(b)(4) only in connection with the 'filing' of the petition. The services for which they seek compensation were performed after the appointment of a trustee without a retention order under § 327 and cannot be said to be in connection with the filing of the petition.").

The facts of the case at bar stand in stark contrast to the respective fact patterns of those cases cited by Minch, as follows: 1) the involuntary petition in this case was uncontested; 2) the debtor retained its own counsel, who then prepared the schedules and other necessary documents after the order for relief was granted; and 3) the case trustee was actively involved in this case and he did not seek to employ Minch on behalf of the estate. Under these circumstances, there is no reason to depart from the majority rule that the order for relief is the "cut-off point" for awarding compensation under §§ 503(b)(3)(A) and 503(b)(4). As a result, the Bank's objection to the attorney's fees claimed by Minch for services performed after the date of entry of the order for relief, November 8, 2010, is sustained; Minch's request for compensation for any services rendered after said date must be denied.

Accordingly, for the reasons articulated in this memorandum decision,

**IT IS HEREBY ORDERED THAT:**

1. The application is granted in part and denied in part.

2. Minch is entitled to payment, as an administrative expense claim under 11 U.S.C. § 503(b)(3)(A), of the filing fee for the involuntary petition in this case in the amount of $299.00, which, to the extent VDI has already reimbursed Minch for this amount, shall inure to the benefit of VDI.

3. Minch is entitled to payment, as an administrative expense under 11 U.S.C. § 503(b)(4), reasonable compensation in the reduced amount of $4,005.00, which, to the extent VDI has already reimbursed Minch for this amount, shall inure to the benefit of VDI.

4. VDI's request for reimbursement of the $3,880.44 identified on its "VDI Detail Fee/Billing List" is denied.