**In re Kenneth ELDER, Debtor.**

**No. 02–83795–RGM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

March 3, 2005.

**822**

Stephen E. Leach, Vienna, VA, for Debtor.

Donald F. King, pro se.

Daniel D. Prichard, Washington, DC, Judy Hamilton Morse, Oklahoma City, OK, for Creditors.

## MEMORANDUM OPINION

ROBERT G. MAYER, Bankruptcy Judge.

The question before the court is whether counsel for a creditor can be compensated by the bankruptcy estate or the creditor can be reimbursed for legal fees it paid to its counsel. Dickstein Shapiro & Oshinsky LLP ("Dickstein") is counsel for Ford Motor Credit Company ("Ford Credit"). Ford Credit and two other creditors filed an involuntary petition in bankruptcy against Kenneth Elder on July 31, 2002. Elder did not contest the petition and an order for relief was entered on August 21, 2002. During the course of the case, Dickstein, without having been employed by the trustee and without Ford Credit having been granted authority to prosecute an avoidance claim, successfully negotiated a significant settlement with the debtor. Ford Credit now seeks to have $33,811.50 paid to it by the estate either by having Dickstein employed retroactively by the trustee or by having the estate reimburse Ford Credit as an administrative expense incurred by it as a creditor in recovering property allegedly improperly transferred by the debtor before the filing of the petition. The court concludes that neither approach is appropriate.

### The Matters in Issue with the Debtor

Both the trustee and Ford Credit filed objections to the debtor's claims of exemption, asserting that certain property was not tenants by the entirety property and, therefore, not exempt.[1] 11 U.S.C. § 522(b)(2)(B). The dispute involved two valuable parcels of real estate. One was purchased by the debtor and his wife in 1987 and held by them as tenants by the

---

1. The trustee filed his objection within the initial deadline, November 30, 2002. Ford Credit obtained six extensions of the deadline before it filed its objection on March 21, 2003. Each extension also extended the deadline for

the three petitioning creditors and the trustee to file objections to the debtor's discharge and the deadline for the three petitioning creditors objection to dischargeability of their debts.

entirety with the common-law right of survivorship. In 2002 they organized a limited liability company of which they were the sole owners. The operating agreement identified them as holding their interest as tenants by the entirety. Ford Credit argued that various provisions of the operating agreement dealing with transfers of member interests are inconsistent with tenancy by the entirety ownership of a member interest. In particular, Ford Credit notes that various sections relate to a sale or transfer of a member interest; the company's right of first refusal upon a sale or other transfer of a member interest; a gift of a member interest to a family member; and the company's option to acquire a member interest upon the happening of certain events such as a member's death or bankruptcy. The debtor argued that these provisions were consistent with a single membership interest held by the debtor and his wife as tenants by the entirety particularly in light of the possibility of additional membership interests arising in the future. Ford Credit argued that the language showed that there were two membership interests, one owned by the debtor and the other owned by his wife. If there were two membership interests that could be individually sold, transferred or given away, they could not be held as tenants by the entirety. The debtor responded that notwithstanding the creation of the limited liability company, record title of the real estate was never conveyed to the company and remained in the debtor and his wife under the original deed.

The second parcel of real estate is alleged to have been partnership property. The debtor asserts that the parcels were never partnership property because of the manner in which they were titled and the requirements of the partnership agree-

ment. Whatever the merits of the respective arguments, on March 21, 2001, the partnership conveyed all of its real property to the debtor and his wife and the other two partners who were also husband and wife, each couple holding its one-half interest as tenants by the entirety. The debtor argued that the claim of exemption should be allowed because the March 21, 2001 deed clearly established a tenancy by the entirety estate. However, he recognized that if the property was partnership property in the first instance, the March 21, 2001 transfer would be the target of an avoidance action.

Both Ford Credit and the debtor recognized that only the trustee could file a complaint seeking to avoid the March 21, 2001 deed and thereby resolve the partnership title issue. *See* Ford Credit's Memorandum in Support of Motion to Set Status Conference and Pretrial Schedule for Objections to Exemptions at 2. ("Ford Credit believes that this transfer is avoidable under Sections 55–80 and 55–81 of the Code of Virginia, and has requested that the Trustee bring an action for the avoidance of the transfer and for restoration of the value of the Debtor's interest in the Arlington Property to the Chapter 7 estate. In the event that the Trustee is unwilling to bring such an action, Ford Credit intends to request that the Court allow it to bring the action on behalf of the Chapter 7 estate."). The parties, therefore, requested that the court establish a pretrial schedule for the hearing on the objection and co-ordinate the hearing with the trial on the anticipated trustee's complaint to avoid the March 21, 2001 transfer.

### The Settlement Agreement

Ford Credit, the trustee and the debtor agreed to settle the exemption and potential avoidance action.[2] The settlement pro-

---

**2.** Only the three petitioning creditors filed claims. Ford Credit's claim, $19,182,258 is

vided that the debtor would pay the trustee $250,000 and certify that there were no other transfers. It further provided that the trustee and Ford Credit would release the debtor with respect to the claim of exemptions and from all potential avoidance actions. The Release and Settlement Agreement provided in paragraph 12:

> *COSTS AND EXPENSES.* The Parties will bear their own costs and expenses in connection with this Agreement and the claims resolved by this Agreement, including, but not limited to, the fees of each parties' agent and counsel.

The settlement was approved by the court on February 24, 2004.

### Trustee's Application to Employ Dickstein Shapiro & Oshinsky LLP as Special Counsel

The trustee filed an application on November 25, 2003, to employ Dickstein under § 327(e) as special counsel to represent the estate in its objection to the debtor's claims of exemption and any potential avoidance action. The application was set for a hearing for December 8, 2003. The hearing was continued five times until February 24, 2004, when the settlement was approved and the application was withdrawn as moot.

### Ford Credit's Application for Administrative Expense

On July 22, 2004, Ford Credit filed an application requesting that its attorney's fees in the amount of $33,811.50 incurred in connection with the settlement be paid by the estate under § 503(b) of the Bankruptcy Code. Ford Credit asserts that it identified the objections to the claims of exemption, the basis for the avoidance action and negotiated the settlement. This resulted in $250,000 being paid into the

estate, which constitutes the bulk of the estate's assets. In particular, Ford Credit's memorandum in support of its application and its counsel's time records reflect that Ford Credit is seeking compensation for its counsel preparing for and attending the first meeting of creditors, preparing for and conducting a Rule 2004 examination of the debtor, preparing Ford Credit's objection to the debtor's claim of exemption, researching the fraudulent conveyance issue, negotiating the settlement, documenting the settlement and preparing the trustee's application to employ Dickstein. More than three-quarters of the fees sought by Ford Credit were incurred before November 19, 2003, the date of the first time entry relating to Dickstein's potential employment by the trustee.

### Trustee's Renewed Application to Retroactively Employ Dickstein Shapiro & Oshinsky LLP

At the court's invitation, the trustee renewed his motion to retain Dickstein. It appeared that retroactive employment had fewer difficulties than Ford Credit's pending application for payment of an administrative expense. After the hearing on the employment application the court requested additional information: the role of an individual named in counsel's time records; all amounts received by the law firm for the services included in the application; and all time records for all work performed by the law firm in connection with this case.

Dickstein filed a supplemental application addressing these issues. It reflected that during the period from the filing of the initial application for employment until it was withdrawn, Dickstein worked on this case and two related cases for Ford Credit and was paid $111,085.20 for all work performed on all three cases. All services

77.52% of all claims filed.

were billed and paid on a monthly basis. The time records for all the related cases were maintained in a single billing file. There was no contemporaneous effort to maintain a separate billing file for this case or to distinguish between work sought to be compensated in the application and work, also in this case, for which no compensation was sought from the estate. All amounts sought to be paid in the renewed employment application have already been paid to the law firm by Ford Credit.

The individual the court requested to be identified was in-house counsel in the Legal Department of Ford Credit. She was the attorney responsible for this bankruptcy case and two related bankruptcy cases. During the period that the initial application for employment was pending, counsel communicated with Ford Credit's in-house counsel about this case and took direction from her on the exemption and avoidance matters.

### Discussion

■ There were no objections to the applications to employ or for the payment of an administrative expense. However, the court reviews every application to employ a professional and every fee application even if there are no objections. In *In re Great Sweats, Inc.*, 113 B.R. 240, 242 (Bankr.E.D.Va.1990), the court stated:

The Court's responsibility in awarding fees is great, as each creditor individually has little reason to object to requested compensation due to the costs incidental to the objection which it would incur compared to the possible amount of recovery from the estate.... [T]he ultimate responsibility lies with the Court.

In a similar vein, the court in *In re Franklin*, 210 B.R. 560, 562 (Bankr.N.D.Ill.1997) stated:

Critical review of uncontested motions, moreover, is consistent with a basic legal principle—that courts are not required to grant a request for relief simply because the request is unopposed.

The court concludes after reviewing the settlement agreement and the two applications that the applications must be denied.

### *The Settlement Agreement*

■ The first obstacle to the applications is the settlement agreement Dickstein negotiated. It provided that each party would bear his own expenses, "including, but not limited to, the fees of each parties' agent and counsel." Release and Settlement Agreement, ¶ 12. This is what was noticed to creditors and approved by the court. All creditors and parties in interest were aware that the trustee's application to employ Dickstein was pending when the settlement was proposed and were aware of paragraph 12 of the settlement agreement. Consistent with this understanding of paragraph 12, the application to employ was withdrawn as moot at the same hearing that the settlement was approved. The agreement that each party would bear its own attorney's fees and the withdrawal of the application to employ Dickstein reduced the potential costs of administration and increased the amount available for distribution to creditors.[3] Having agreed to bear its own attorney's fee as a part of the settlement, it cannot now seek to have the bankruptcy estate pay its attorney's fees either under § 330 as compensation for counsel to the estate or under § 503 as an administrative expense.

---

**3.** The net benefit to Ford Credit in having the estate pay its entire attorney's fee is not the 33,811.50 sought, but $7,600.37, the difference between 100% of the fee and 77.52% of the fee. Ford Credit will receive 77.52% of the amount that might otherwise have been paid to Dickstein in any event.

### *Application to Employ*

■ The renewed application to retroactively employ Dickstein as special counsel under § 327(e) is unavailing. Retroactive employment requires that the applicant meet three tests: There is good cause for the delay; there is no prejudice to the bankruptcy estate or the creditors if the employment is approved retroactively; and the employment would have been approved originally.

Good cause has not been shown for the delayed application. The initial application was filed on November 25, 2003. The hearing on it was continued many times. It was withdrawn on February 24, 2004, when the matters that necessitated employment were resolved. No explanation has ever been offered as to why the application was not timely prosecuted at any of the many dates that it was on the court's docket.

Retroactive approval will prejudice the other two creditors in the case. By withdrawing the trustee's application to employ Dickstein as moot, it was clear that Dickstein was to be paid by Ford Credit and not the estate. Retroactive employment would change the terms of the settlement to the prejudice of the remaining creditors.

Finally, it is not clear that the initial application would have been approved. Applications to employ attorneys are governed by § 327 of the Bankruptcy Code. Section 327(a) establishes a strict standard for all professionals. The proposed professional may not hold or represent an interest adverse to the estate and must be disinterested. This disqualifies counsel who represents the debtor or a creditor. Recognizing that there may be circumstances when an attorney representing a creditor or the debtor may be the best choice to also represent the estate, Congress provided two exceptions to § 327(a), § 327(c) which deals with a creditor's counsel and § 327(e) which deals with the debtor's counsel. In this case, § 327(e) is not applicable because Dickstein never represented the debtor. The only exception available is § 327(c). Dickstein must satisfy all requirements of § 327(a), however, if it is "disqualified for employment under [§ 327(a)] *solely* because of [its] employment by a representation of a creditor" it may still be employed by the estate if it satisfies the requirements of § 327(c). 11 U.S.C. § 327(c) (emphasis added).

As originally enacted in 1978, § 327(c) would have prohibited employment of Dickstein in this case. Originally, § 327(c) provided:

> In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, but may not, while employed by the trustee, represent, in connection with the case, a creditor.

11 U.S.C. § 327(c) (now repealed). In 1984, Congress loosened the standard. The subsection now reads:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c) (West 2004). In this case, Dickstein satisfies all the requirements of § 327(a) except for its prior and concurrent representation of Ford Credit. Section 327(c) permits Dickstein's employment by the estate and the continued representation of Ford Credit in this case if

Dickstein does not have an actual conflict of interest.

The term "actual conflict of interest" is not defined in the Bankruptcy Code. "[T]he determination as to whether an actual conflict of interest existed in this case must be guided by federal bankruptcy law and not state law. State law, including state rules of professional conduct, although perhaps informative, are not determinative." *In re Johnson,* 312 B.R. 810, 822 (E.D.Va.2004). *Johnson* adopted a pragmatic definition:

> [A]n alleged conflict of interest is "actual" and warrants disqualification under § 327(c) if there is "active competition between two interests, in which one interest can only be served at the expense of the other." *See In re BH & P, Inc.,* 103 B.R. 556, 563 (Bankr.D.N.J.1989), *aff'd* 949 F.2d 1300 (3d Cir.1991).

*Id.* at 822.

In *Johnson* the debtor objected to the fee application of the trustee's counsel who had been employed for limited purposes. Counsel represented a major creditor. The bankruptcy court found that there was no actual conflict and awarded counsel the fees requested. The district court affirmed the fee award. It found that there was no actual conflict of interest. It noted that both the creditor and the trustee were working to the same goal; that both sought to enlarge the bankruptcy estate; and that both identified the same issues. There were no issues that could only be resolved at the expense of either the creditor or the estate.

This case is similar to *Johnson.* Both the trustee and Ford Credit objected to the debtor's claim of exemption on substantially the same grounds. Both recognized the possible avoidance action. Both had the same ostensible goal, maximizing the estate. But, the similarities end there. Here, Dickstein was actively engaged in representing Ford Credit on the very same issues it now seeks to represent the trustee retroactively. If simultaneous representation had been approved from the beginning, the issue of advising two different clients on the same issues at the same time and taking instructions from two masters could have been addressed. Their positions were not the same. Their objectives could diverge and their negotiating strengths differed. Throughout the negotiations, Ford Credit always held a card that the trustee did not have, an objection to the dischargeability of its $19.1 million claim. This necessarily affected the negotiating positions. Where there are limited funds with which the debtor may settle claims, there is necessarily competition between the allocation of those limited funds to the exemption and avoidance matters which benefit the estate and to the dischargeability matter which benefits only Ford Credit. In one instance, the recovery becomes property of the estate and available for distribution to all creditors. In the other, Ford Credit receives the funds. With limited funds available to the debtor, any settlement will be at the expense of either the estate or the creditor. Even though all of the settlement proceeds were in the end paid to the trustee, the conflict existed throughout the period in question. The court does not know, and it now may be impossible to determine, how the potential dischargeability issue affected the course of the negotiations. But, the conflict was always present and was perpetuated by Ford Credit's many requests to extend the time within which it could file a dischargeability complaint. Apparently, Ford Credit felt that this extra card had value. The estate would not benefit from the filing of such a complaint. Whether they shared a common goal, to maximize the estate, is unclear. Ford Credit's goal may have been to maximize

its recovery by pressing the value of its dischargeability claim, a goal that could only be fulfilled at the expense of the estate. The fact that it was not realized does not eliminate the conflict after the fact.

■ When counsel is employed by a bankruptcy estate, the trustee expects and is entitled to counsel's undivided loyalty on the matters within the scope of employment. There can be only one master on those matters. Here, there are indicia that this may not have been the case. Counsel maintained only one billing file. All time entries were recorded in it. Monthly bills were sent to Ford Credit. Ford Credit paid them every month. This is particularly significant in bankruptcy cases because payments by third parties are closely scrutinized to assure that there is no misplaced loyalty. Ford Credit requested administrative expense treatment for matters that should have been the creditor's responsibility in any event, such as preparing for and attending the first meeting of creditors and other actions taken before Ford Credit approached the trustee about retaining its counsel. Ford Credit requested compensation for obtaining an extension of the deadline to file objections to the debtor's claim of exemption after the trustee had timely filed his own objection and for preparing its objection when the trustee had already filed his. There were continuing communications on the matters with the creditor's in-house counsel.

These indicia suggest a divided loyalty and that the employment would not have been approved if requested timely. Perhaps, if a timely application had been filed and prosecuted, the inherent potential conflicts might have been addressed and might not have matured to actual conflicts. But, that did not happen. Retroactive employment cannot retroactively establish safeguards that ought to have existed but were not actually established. Without appropriate safeguards, there were actual conflicts.

■ Finally, Dickstein has already been paid. Counsel cannot be paid twice for the same work. Having already been paid by Ford Credit, it cannot now be paid by the estate. It may be argued that Dickstein will refund Ford Credit the fees already paid or will simply forward the check it receives from the trustee to Ford Credit. In either event, the employment application is really a disguised application to reimburse Ford Credit for an administrative fee and the matter is properly brought before the court on Ford Credit's application for payment of an administrative expense, not the employment application.

### Application for Payment of an Administrative Expense

Ford Credit seeks reimbursement of an administrative expense under § 503(b)(1)(A) for expenses incurred in preserving the estate and § 503(b)(3)(B) and (b)(4). Section 503(b)(3)(B) permits a creditor to be paid his expenses as an administrative expense if the creditor "recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor." Section 503(b)(4) permits a creditor to recover his attorney's fees if his expenses are recovered under § 503(b)(3). Ford Credit also argues that even if these specific provisions are not applicable, they are merely illustrative of the types of administrative expenses that may be awarded under § 503(b) which permits administrative expenses and, before enumerating six types, says, "including" thus making the following six subsections illustrations of administrative expenses and not a limitation on the administrative expenses that may be awarded.

■ Ford Credit's argument that the six subsections in § 503(b) are not an ex-

haustive list of all the administrative expenses that may be awarded is well taken. However, when a subsection directly addresses the type of administrative expense sought, the restrictions in it cannot be avoided by appealing to the non-exclusive nature of § 503(b). Here, § 503(b)(3)(B) is just such a subsection. It clearly allows a creditor to recover its expenses, and through the application of § 503(b)(4), its attorney's fees, if it recovers property transferred or concealed by the debtor. There is, however, a restriction: The recovery must be after court approval. There was no court approval in this case. In fact, there was no request for court approval.

Ford Credit asks that it be given retroactive authority to recover the property.[4] The plain language of § 503(b)(3)(B), "a creditor that recovers, after the court's approval," means that the recovery must be *after* court approval. The restriction is important and is in accordance with the policy behind the provision. The trustee is the sole representative of the estate. 11 U.S.C. § 323(a). Certain actions may only be taken by him. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000); *In re JKJ Chevrolet, Inc.*, 26 F.3d 481, 484 (4th Cir.1994). This assures that the estate will be administered in an orderly and efficient manner without a multiplicity of wasteful litigation and without diverting the trustee's attention. The trustee makes the decisions of what actions to bring, when to bring them and how to prosecute them. A creditor may disagree with a trustee's decision not to prosecute an action. In that event, the creditor may seek to compel the trustee to act or may seek court approval to prosecute the action itself. If granted, the creditor prosecutes the action on behalf of the estate, not on its own behalf. This policy and the availability of a remedy if the trustee fails to act re-enforce the plain meaning of § 503(b)(3)(B) that prior approval is required.

If retroactive authority were available, the three tests for retroactive approval of employment of professionals would be the minimum requirements that must be met. One is good cause for the delayed application. Here, there is none. Ford Credit knew that such authority was necessary to prosecute an avoidance action in the event that the trustee refused to do so and had ample time to seek appropriate authority. In its motion to set a status hearing on its objection to the debtor's claim of exemptions, it argued that the avoidance action was so intertwined with the objection to the claim of exemption that they should be tried together. In Ford Credit's July 15, 2003, Memorandum in Support of Motion to Set Status Conference and Pretrial Schedule for Objections to Exemptions, it said at page 2:

> Ford Credit believes that this transfer is avoidable under Sections 55–80 and 55–81 of the Code of Virginia, and has requested that the Trustee bring an action for the avoidance of the transfer ...
> In the event that the Trustee is unwilling to bring such an action, Ford Credit intends to request that the Court allow it to bring the action on behalf of the Chapter 7 estate.

More than six months passed before the matters were settled. Ford Credit had ample opportunity to convince the trustee

---

4. Ford Credit does not address the issue of whether a successful objection to a claim of exemption (an action that any creditor may take without court approval) is a recovery of property that was transferred or concealed by the debtor within § 503(b)(3)(B). The application does not endeavor to allocate counsel's time between the exemption and the avoidance issues.

to act or to seek approval to bring an avoidance action on behalf of the estate. It never sought approval to prosecute an avoidance action or offered an explanation for why it did not.

Another minimum requirement is that Ford Credit would have been granted authority to prosecute an avoidance action if it had timely sought the authority. Ford Credit would not have been granted such authority. There has been no showing that the trustee would not bring an avoidance action.

In this case, if there were an ability to obtain retroactive approval to recover property for the benefit of the estate, the standards have not been met and it would be denied.

### Conclusion

The trustee's application to retroactively employ Dickstein Shapiro & Oshinsky LLP as counsel and Ford Credit's motion for payment of an administrative expense will be denied.