**In the matter of Alfonzo L. HALL, Debtor.**

**No. 03–61458.**

United States Bankruptcy Court, S.D. Georgia, Statesboro Division.

Dec. 8, 2006.

Jesse C. Stone, Merrill & Stone, LLC, Swainsboro, GA, for Debtor.

Anne R. Moore, Statesboro, GA, for trustee.

Joel Paschke, Savannah, GA, for U.S. Trustee.

## MEMORANDUM AND ORDER ON THE PETITIONING CREDITORS' SECOND AMENDED APPLICATION FOR COMPENSATION

LAMAR W. DAVIS JR., Bankruptcy Judge.

On December 1, 2003, Attorney J. Michael Hall (hereinafter, "Applicant"), on behalf of 71 former employees of International Agile Manufacturing, LLC ("IAM"), filed an involuntary Chapter 7 petition against Alfonzo L. Hall (the "Debtor"), the owner of IAM.[1] Applicant had previously filed an involuntary petition against IAM, and both cases were subsequently converted to Chapter 11 cases. On April 21, 2005, the Debtor's Chapter 11 case was reconverted to a Chapter 7 proceeding, and Anne R. Moore was appointed to serve as the Chapter 7 Trustee.[2] In addition to his employment as counsel to the 71 former IAM employees (the "petitioning creditors"), Applicant was hired as counsel in the IAM case by the Chapter 7 Trustee, James Wessinger, to pursue certain preference actions, and he has been compensated for that and other work. On behalf of the petitioning creditors, Applicant now brings a Second Amended Application for Compensation (the "Second Amended Application") before the Court. *See* Dckt. No. 473 (September 29, 2006). The Second Amended Application has raised the objections of both the United States Trustee ("UST") and the Chapter 7 Trustee. *See* Dckt. No. 472 (September 29, 2006); Dckt. No. 485 (September 28, 2006).

### FINDINGS OF FACT

A hearing on Applicant's Second Amended Application was held on September 15, 2006, at which Applicant, the UST, and the Chapter 7 Trustee appeared. At the hearing, the parties reached the following stipulations:

1. Applicant was never hired by either the Chapter 11 debtor-in-possession or the Chapter 7 Trustee.

2. There was no agreement between the Chapter 11 debtor-in-possession and Applicant for the estate to be liable for his fees.

3. There was no agreement between the Chapter 7 Trustee or her counsel, Jesse Stone, and Applicant for the estate to be liable for his fees.

4. At all relevant times, Mr. Stone acted as attorney for the debtor-in-possession while this was a Chapter 11 case and as attorney for the debtor-in-possession in connection with litigation against the Park Avenue Bank ("Bank").

5. At all times while the case was pending under Chapter 7, Mr. Stone acted as counsel to the Chapter 7 Trustee.

---

1. Because the Debtor's bankruptcy case was filed before October 17, 2005, the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 do not apply to this matter.

2. On August 5, 2004, IAM's bankruptcy case was also reconverted to Chapter 7. *See* Case No. 03–61141, Dckt. No. 199.

6. Any authority for payment of any fees to Applicant for services while the case was pending under Chapter 11 is found in 11 U.S.C. §§ 503(b)(3)(A), (B) and (D).[3]

7. Any authority for payment of any fees to Applicant for services while the case was pending under Chapter 7 is found in Sections 503(b)(3)(A) and (B).

8. The time records supporting Applicant's Second Amended Application are true and accurate reflections of the work performed by him and the members of his firm for which he seeks compensation.

One of the major disputes in this case relates to the claim of the Bank, which had loaned approximately $1.3 million to IAM pre-petition. To secure that loan, the Bank had taken a deed to secure debt on real property worth approximately $700,000.00. That deed was executed by IAM, but it was later learned that the real property was titled in the name of the Debtor personally. As a result, the Bank sued the Debtor in the Superior Court of Bulloch County seeking an equitable reformation of the deed to reflect its contention that it held a valid deed to secure debt as partial security for the $1.3 million loan. When the Bank filed its lawsuit, it also filed a notice of *lis pendens* in the Superior Court record in an effort to provide notice to all parties of its adverse claim to the real estate in question.

Although a hearing was scheduled in the Superior Court litigation, the filing of the involuntary petition against the Debtor stayed that action. Mr. Stone subsequently filed an adversary proceeding to determine the extent, validity, and priority of the Bank's lien. *See* Adv. Proc. No. 04–06016. Furthermore, he sought to establish that under the strong-arm powers of Section 544, title to the real property remained in the Debtor and was an asset that could be administered in his Chapter 11 case.

On August 9, 2004, the petitioning creditors filed a motion to intervene in that adversary proceeding as co-plaintiffs. Through Applicant, they actively participated in those proceedings by filing various motions, engaging in discovery, and contributing to the mediation that ultimately resulted in the settlement of that litigation. That settlement was presented to the Court, approved, and resulted in a payment of $325,000.00 to the Debtor's Chapter 7 bankruptcy estate. *See* Dckt. No. 459 (September 22, 2006).

In his Second Amended Application, Applicant seeks approximately $50,000.00 in fees and expenses comprised of four main elements. *See* Dckt. No. 473 (September 29, 2006). First, as a result of his participation in the litigation with the Bank, Applicant asserts that the petitioning creditors made a substantial contribution to the Debtor's estate pursuant to Section 503(b)(3)(D) and are entitled to compensation of approximately $27,000.00 for his efforts during the Chapter 11 case. Another $4,000.00 in fees related to this litigation accrued post-conversion, and Applicant seeks their recovery under the authority of Section 503(b)(3)(B). In addition, Applicant contends that he developed the argument that the Bank had not met the commercial reasonableness standard in liquidating certain collateral, which Applicant believes gave the parties additional leverage against the Bank in reaching the settlement approved by the Court. He seeks approximately $2,000.00 for this work pursuant to Section 503(b)(3)(D).

---

**3.** Hereinafter, all Section references are to Title 11 of the United States Code.

Second, Applicant seeks approximately $7,000.00 for additional services he provided before the Debtor's case was converted from Chapter 11 to Chapter 7. These services include the filing of a motion to convert the case to Chapter 7 as well as an objection to the Debtor's disclosure statement. Claiming that this work provided a substantial contribution to the Debtor's Chapter 11 case, Applicant seeks this compensation pursuant to Section 503(b)(3)(D).

Third, Applicant seeks compensation for the recovery of real property in South Carolina worth approximately $80,000.00 to $100,000.00. This property was scheduled by the Debtor, but upon investigation, a defect in the Debtor's title was discovered. Applicant hired South Carolina counsel to bring a quiet title action and ensure that the real property could be administered by the Debtor's estate. For his preconversion work, Applicant seeks approximately $1,000.00 pursuant to Section 503(b)(3)(D). For his postconversion work, Applicant seeks approximately $2,000.00 pursuant to Section 503(b)(3)(B).

Finally, Applicant seeks compensation of approximately $7,000.00 pursuant to Section 503(b)(3)(A). This compensation is for general work performed after the Debtor's case was converted to Chapter 7, as well as for the fees and costs incurred with Applicant's efforts to consolidate the bankruptcy cases of the Debtor and IAM.

Applicant claims that positive results were obtained through his efforts. He points to the $325,000.00 paid to the Debtor's estate by the Bank and an additional $100,000.00 from insurance proceeds and the South Carolina real property. After payment of Mr. Stone's fees and the Chapter 7 Trustee's anticipated fees and commissions, and even under the assumption that the Second Amended Application is granted in its entirety, there will be a distribution of one hundred percent or nearly one hundred percent to the priority wage claimholders, Applicant's clients. Other priority claims, including a $1 million claim of the Internal Revenue Service, and all unsecured claims are not expected to receive any distribution.

It is clear that during the course of the litigation with the Bank, Applicant and Mr. Stone worked closely together in coordinating their efforts and in brainstorming ways to pursue the litigation to a successful conclusion. According to the testimony of Mr. Stone, Applicant's efforts "were an important factor in bringing about the result obtained." Dckt. No. 455 (September 15, 2006). Nevertheless, Mr. Stone and Applicant operated independently, and at times they disagreed on certain strategic and tactical decisions. As described above, it has been stipulated that Applicant's services were never contracted for by the Chapter 7 Trustee or by Mr. Stone. The evidence before the Court does not reveal that at any time was there any understanding that Applicant and his firm might shoulder some of the time and effort necessary to complete a particular task in the case in such a way that Mr. Stone's fees and expenses were reduced.

At all times, Mr. Stone represented the interests of the estate while the case was pending under Chapter 11 and Chapter 7. Furthermore, neither the Debtor nor the Chapter 7 Trustee ever indicated any dissatisfaction with Mr. Stone's services. While some of the pleadings filed by Applicant were helpful in the litigation with the Bank, Mr. Stone did not consider the consolidation motion or the judgment on the pleadings motions to be particularly useful or of value to his efforts. Applicant's participation in the mediation process was helpful in reaching the ultimate settlement with the Bank, but he appeared at all times in that process as counsel for the co-

plaintiffs, the petitioning creditors, and not for the Debtor's estate.

## CONCLUSIONS OF LAW

Section 503(b)(4) allows a creditor to be reimbursed for "reasonable compensation for professional services rendered by an attorney or an accountant" if the creditor's administrative expense claim is allowable under Section 503(b)(3). Therefore, Applicant cannot be awarded compensation for his services as attorney unless the petitioning creditors' efforts are encompassed by Sections 503(b)(3)(A), (B), or (D), which provide the following:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under [Section 502(f)] of this title, including—
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph
> (4) of this subsection, incurred by—
> (A) a creditor that files a petition under [Section 303] of this title;
> (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;
> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under [Section 1102] of this title, in

making a substantial contribution in a case under [Chapter 9 or 11] of this title. 11 U.S.C. § 503(b)(3).

### I. Section 503(b)(3)(A)

█ Section 503(b)(3)(A) allows as an administrative expense the actual and necessary expenses incurred by "a creditor that files a petition under [Section 303] of this title." 11 U.S.C. § 503(b)(3)(A). Pursuant to Section 503(b)(3)(A), the petitioning creditors seek payment of fees of $1,220.25 and costs of $5,467.50 incurred after the entry of the Order for Relief. *See* Dckt. No. 473, p. 15 (September 29, 2006). Applicant asserts that these fees and costs were incurred as a result of his efforts to consolidate the bankruptcy estates of the Debtor and IAM. Furthermore, he contends that the plain language of the Code permits an award of fees throughout the case and does not limit the fees to those incurred in filing the involuntary action. *See Id.,* p. 14 (citing *In re On Tour, LLC,* 276 B.R. 407 (Bankr.D.Md. 2002) and *In re Westek Georgia, LLC,* 317 B.R. 567 (Bankr.M.D.Ga.2004)).

Those contentions, however, are not supported by a majority of the caselaw on this topic.[4] Collier states the following:

> Entry of the order for relief acts as a cut-off point for the assertion of an administrative claim based on commencement of an involuntary case. Once the order for relief is entered, the goal of

---

**4.** The cases cited by Applicant are distinguishable. In *Westek,* Judge Hershner reviewed an application made pursuant to Section 503(b)(3)(A) for the compensation of services concerning the preparation, filing, and adjudication of an involuntary petition. 317 B.R. at 569. The application was approved but only after the court determined that all of its entries for services *not* associated with bringing the involuntary petition had been deleted. *Id.* at 570. Furthermore, in *On Tour,* Judge Mannes approved a portion of an application for compensation made pursuant to Section

503(b)(3)(A) for services performed after the entry of the order for relief. 276 B.R. at 407. That portion was approved, however, only after the court noted that the debtor had been non-responsive to court orders, the case lacked an actively participating trustee to protect the interests of creditors, and the petitioning creditors alone were responsible for the effective administration of the debtor's case. In light of its distinguishable facts and the authority cited *infra, On Tour* is not persuasive.

filing the involuntary case has been met. If a creditor desires reimbursement for expenses incurred after that point, it must find a basis other than [Section 503(b)(3)(A)].

4 *Collier on Bankruptcy*, § 503.10[2][b] (Matthew Bender 15th ed. rev.).

This language comes from one of the leading cases on this subject that I find persuasive, *In re Indian Motocycle Apparel and Accessories Co., Inc.,* 174 B.R. 659 (Bankr.D.Mass.1994). That court stated:

The services associated with the filing of an involuntary petition necessarily include consultation with petitioning creditors and coordination of their joint venture. Those services also include the actual preparation of the involuntary petition and effectuation of service of process.

To the extent that the petition is contested by the alleged debtor, reimbursement of the petitioning creditors' expenses must also include legal services necessary to meet the challenge. *However, once the Order for Relief enters and becomes final, legal services associated with the filing of the involuntary petition are completed. Additional services rendered after the entry of the Order for Relief are compensable from the estate only to the extent that counsel renders those services on behalf of the Trustee, after Court authorization.*

*Id.* at 662–63 (emphasis added).

Pursuant to this rationale, a creditor may not be awarded compensation under Section 503(b)(3)(A) once the order for relief has been entered in a debtor's case. One court in this Circuit permitted compensation to an attorney pursuant to Section 503(b)(3)(A) for services rendered after the entry of an order for relief. In *In re Klein,* 328 B.R. 597 (Bankr.M.D.Fla. 2005), Judge Paskay permitted this compensation after concluding that the attorney acted in good faith and that the trustee accepted his services. It is important to note however, that Judge Paskay did not award all the fees sought by the attorney. In addition, he prefaced the award by acknowledging that the "services rendered by [the attorney] and his paralegal after the Order for Relief *ordinarily* would not be compensable." *Id.* at 599 (emphasis added). Finally, the only court to review *In re Klein* declined to follow its allowance of fees pursuant to Section 503(b)(3)(A) for work performed after the entry of the order for relief. *See In re Amanat,* 340 B.R. 713, 718 (Bankr.S.D.N.Y.2006)(electing to follow the majority position, granting compensation pursuant to Section 503(b)(3)(A) only for work performed up until the entry of the order for relief).

In the present case, the involuntary petition was filed on December 1, 2003, and an order for relief under Chapter 7 was entered on January 21, 2004. The UST contends that Applicant has conceded that he has already been fully compensated by order of Judge Dalis for his costs in filing the involuntary petition. *See* Dckt. No. 472, p. 6 (September 29, 2006). That order was entered in the bankruptcy case of IAM, not the Debtor's case. *See* Case No. 03–61141, Dckt. No. 227 (November 18, 2004). Nevertheless, Applicant has not disputed the UST's contention on this point. Following the plain text of the statute and the rationale of the majority of opinions on this subject leads me to conclude that the petitioning creditors are prohibited from receiving compensation pursuant to Section 503(b)(3)(A) for any of Applicant's services and costs incurred after the entry of the order for relief in this case.

*II Section 503(b)(3)(B)*

█ Section 503(b)(3)(B) allows as an administrative expense the actual and necessary expenses incurred by "a creditor

that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor." 11 U.S.C. § 503(b)(3)(B). Applicant asserts that the petitioning creditors have benefitted the estate through the recovery of significant property that was transferred or concealed in this case. *See* Dckt. No. 473, p. 10 (September 29, 2006). Applicant argues that Section 503(b)(3)(B) permits the petitioning creditors to recoup fees and costs expended during the Chapter 7 phase of the case, when he acted without this Court's approval. He seeks $4,058.87 for his work in the Bank litigation. *See Id.*, p. 11. He also seeks $2,250.15 for fees and costs incurred for his work on the South Carolina real property issue. *See Id.*, p. 13.

■■■ Because he did not previously obtain this Court's approval for his services, Applicant seeks retroactive approval of his employment. A retroactive appointment to serve as *debtor's counsel* is appropriate and reasonable if (1) the attorney is otherwise qualified to serve and would have been appointed earlier had a timely application been made, and (2) the attorney's failure to obtain prior approval is excusable. *See In re Glover*, 2003 WL 23811474, *3 (Bankr.S.D.Ga.2003); *In re TAI Intel Airways, Inc.*, Case No. 91–20162, Dckt. No. 277 (Bankr.S.D. Ga. June 22, 1995). Here, there has been no showing of excusable neglect on Applicant's part. Furthermore, since the Debtor already had counsel, there is insufficient evidence to conclude that Applicant would have been appointed if he had sought a timely appointment. Indeed, because the Chapter 7 Trustee and the UST oppose the Second Amended Application, I infer that an earlier application would have also been opposed. Applicant has not carried his burden even assuming that the same standard applies to a creditor's counsel.

However, the standard is not the same because the statutory language of Section 503 differs and expressly provides for the reimbursement of a creditor's attorney's tees only for services that were rendered *after* court approval:

> The Court is not at liberty to simply ignore the language found in [Section 503(b)(3)(B)]. Bankruptcy courts are required to defer to the statutory language of the Code and to follow its "plain meaning." *To allow an administrative expense to a party for the recovery of a transferred or concealed asset without that party obtaining prior Court approval, would be tantamount to deleting the phrase from the statute.* Doing so would alter the plain meaning of [Section 503(b)(3)(B)] and render its language—"after the court's approval"—nugatory. Courts should be circumspect in interpreting the Code in such a way.

*In re Cent. Idaho Forest Products*, 317 B.R. 150, 157 (Bankr.D.Idaho 2004) (citations omitted)(emphasis added).

This interpretation of the text of Section 503(b)(3)(B) has been widely accepted by other courts as well. *See In re Elder*, 321 B.R. 820, 829 (Bankr.E.D.Va.2005)(stating that the plain language of Section 503(b)(3)(B) means that recovery must be after court approval and that this "restriction is important and is in accordance with the policy behind the provision"); *In re Monahan*, 73 B.R. 543, 544 (Bankr.S.D.Fla.1987)(stating that "generally courts decline to award fees unless the Bankruptcy Code specifically authorizes payment and the attorney has fully complied with all conditions precedent to receiving reimbursement."); *In re Romano*, 52 B.R. 590, 593 (Bankr.M.D.Fla. 1985)("This Court is satisfied that the better view is represented by the line of cases which hold that prior court approval is

prerequisite to the allowance of a creditor's reasonable fees and expenses as an administrative priority pursuant to [Section 503(b)(3)(B) ]."); *In re Spencer*, 35 B.R. 280, 282 (Bankr.N.D.Ga.1983)("Although applicant's efforts resulted in a beneficial recovery to the estate, because in the instant case the applicant did not seek prior approval, it is not entitled to such recovery under [Section 503(b)(4) ].").

While these cases may appear at odds with my previous decisions in *Glover* and *TAI*, those cases dealt only with *debtors' attorneys* seeking retroactive appointment and compensation under Sections 327 and 330, and I reaffirm their holdings. Sections 327 and 330 require professionals to have the "court's approval" to be employed and thus compensated, but they are silent on the question of whether services rendered before the "court's approval" can be compensated pursuant to a retroactive appointment. In contrast, Section 503(b)(3)(B) effectively forecloses such relief due to the phrase "after the court's approval." Permitting a creditor to receive compensation pursuant to Section 503(b)(3)(B) without receiving prior court approval would effectively disregard and read out a requirement that Congress deemed important enough to include in the Bankruptcy Code. This Court is obligated to follow the explicit terms of Section 503(b)(3)(B) as it was written by Congress. Because Applicant did not receive the pri-

or approval of this Court to either participate in the litigation with the Bank or recover the South Carolina real property, he is ineligible to recover compensation for these services pursuant to Section 503(b)(3)(B).[5]

### III. Section 503(b)(3)(D)

Section 503(b)(3)(D) allows as an administrative expense the actual and necessary expenses incurred by "a creditor . . . in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3)(D). The petitioning creditors seek a total of $37,174.05 under this section. These fees and expenses are categorized in the following manner:

| | | |
|---|---|---|
| A. | The Bank Litigation | $27,041.50 |
| B. | The 9/11 Medallions Disposition | $ 1,849.50 |
| C. | General Case Work | $ 7,152.77 |
| D. | South Carolina Real Property | $ 1,130.28 |

*See* Dckt. No. 473, pgs. 8, 10 (September 29, 2006).

The petitioning creditors assert that they made a substantial contribution to this case by filing the involuntary petition against the Debtor, which stayed the state court action initiated by the Bank to reform the security deed that the Debtor signed. They claim to have maintained an active role in resolving that dispute while the Debtor's case was in Chapter 11, working with the Debtor's counsel before reaching a settlement with the Bank. As for the South Carolina real property, Applicant discovered a defect in the deed, hired a

---

5. Applicant has provided the Court with a fax cover sheet upon which the Chapter 7 Trustee addressed the following question to him, "None to date. Has the title problem in S.C. been cleared up?" *See* Dckt. No. 473, Ex. F (September 29, 2006). Citing this evidence, Applicant argues that the Chapter 7 Trustee is estopped from objecting to his fees for his services concerning the South Carolina real property while the Debtor's case was in Chapter 7. However, Applicant cites no authority to support this argument. Moreover, the UST's objection remains, and no evidence has

been cited for the proposition that the UST is estopped from pursuing its objection. Furthermore, despite the apparently inequitable result of this Court's decision, whatever equitable powers this Court may possess cannot alter an explicit provision of the Code. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir.2004)("The general grant of equitable power contained in [Section 105(a)] cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself.").

South Carolina attorney to file a quiet title action to correct the defect, and successfully brought an asset into the estate that is valued between $80,000.00 and $100,000.00.

The Bankruptcy Code does not define "substantial contribution" or set forth criteria to be used in determining whether a substantial contribution has been made to a case. The seminal decision on Section 503(b)(3)(D) in the Eleventh Circuit is *In re Celotex Corp.*, 227 F.3d 1336 (11th Cir. 2000). The issue in that case was whether Section 503(b)(3)(D) permits a creditor to recover fees and expenses for a substantial contribution to a bankruptcy case where the creditor has an adverse interest to the debtor. The Eleventh Circuit concluded that a creditor's motive in taking actions that benefit the estate has little relevance in the determination of whether the creditor has made a substantial contribution. In *Celotex*, the Eleventh Circuit noted that a substantial contribution had been made where a reorganization plan would not have been achieved in the case but for the efforts of the creditors' law firm. *Id.* at 1340. The court expressly refrained from defining with specificity what constitutes a substantial contribution under Section 503(b)(3)(D).

Courts in the Middle District of Florida have developed a three-prong analysis for determining a "substantial contribution" in light of *Celotex*. The required factors include: (1) the creditor's actions directly and demonstrably benefit the estate; (2) the creditor's actions foster and enhance, rather than retard or interrupt, the progress of reorganization; and (3) the creditor's actions must be considerable in amount, value, or worth. *In re Kidron, Inc.*, 278 B.R. 626, 633 (Bankr.M.D.Fla. 2002). Other factors have been recognized to be relevant in this analysis as well. *See In re FRG, Inc.*, 124 B.R. 653, 658 (Bankr.E.D.Pa.1991)(stating that services to be compensated under Section 503(b)(3)(D) "must not have been duplicative of services performed by others"); *In re Farm Bureau Services, Inc.*, 32 B.R. 69, 71 (Bankr.E.D.Mich.1982)(stating that expenses under Section 503(b)(3)(D) "must have been actual and necessary before reimbursement can be allowed"). While all of these factors are helpful in the analysis, courts appear to focus attention on one element in particular, whether the contribution that the creditor purportedly made to the bankruptcy proceeding would have occurred without the creditor's actions.

For example, in *In re United Container LLC*, Judge Glenn granted an application made under Section 503(b)(3)(D) after determining that "the creditors *filled the leadership void* that existed in the early stages of the case, and that the financial aspect of the case was salvaged *only as a result of their efforts*." 305 B.R. 120, 127 (Bankr.M.D.Fla.2003)(emphasis added). Furthermore, in two opinions in *In re New Power Co.*, Judge Drake hinged his decisions to grant or deny applications for compensation on whether the moving party had demonstrated that it was the sole actor in producing a benefit for the estate. See 311 B.R. 118, 125 (Bankr.N.D.Ga. 2004)("The Court believes that the Debtors already intended to investigate and pursue any viable claims. Again, [the moving party] has failed to establish that the Debtors could not or would not investigate and pursue these claims."); 313 B.R. 496, 503 (Bankr.N.D.Ga.2004)("In short, there is simply insufficient evidence in the record to support [the moving party's] contention that its efforts, including the presentation made by [it] to the Debtors and the Committee, provided a benefit to the estate that was not already being provided by the Debtors' own employees or consultants."); *see also In re Granite Partners, L.P.*, 213 B.R. 440, 445 (Bankr.S.D.N.Y.1997)("Ex-

tensive participation alone is insufficient to justify an award [pursuant to Section 503(b)(3)(D)].").

Using this framework, the Court will address the various services for which the petitioning creditors seek compensation pursuant to Section 503(b)(3)(D).

### A. The Bank Litigation

■ Mr. Stone testified that the petitioning creditors made an "important" contribution to the litigation with the Bank. In particular, he stated that Applicant's work was very beneficial with regards to the mediation with the Bank and in reaching a settlement in that matter. Applicant took the lead on some aspects of the litigation. Mr. Stone also stated, however, that he would have gone forward with the litigation against the Bank regardless of the petitioning creditors' involvement in the case. He testified that Applicant did things that he would not have done due to the uncertainty that they would produce any value to the estate. Some of the research performed by Applicant had been previously done by Mr. Stone in other bankruptcy cases. According to his testimony, Mr. Stone did not think Applicant's work on substantive consolidation and a motion for a judgment on the pleadings added much value to the case. Furthermore, it does not appear that there was a defined division of labor between Mr. Stone and Applicant that reduced costs and expenses for the Debtor's estate. Finally, Mr. Stone was unsure whether the settlement of the litigation with the Bank would have been achieved without Applicant. He also noted, however, that it was the Bank that sought the mediation with the Debtor and that it probably would have been possible to settle the case without Applicant's efforts. See Dckt. No. 455 (September 15, 2006).

Applicant has not produced evidence that Mr. Stone neglected or withdrew from any important or relevant segment of the Bank litigation in such a way that Applicant was required to fill that void and "carry the flag" on behalf of the Debtor. Due to the fact that Mr. Stone fully represented the debtor-in-possession while his case was in Chapter 11 in the litigation with the Bank, and due to the lack of evidence that Applicant and the petitioning creditors performed a function in that litigation that had been effectively abandoned or relinquished by Mr. Stone or the debtor-in-possession, that portion of the Second Amended Application seeking compensation for this work pursuant to Section 503(b)(3)(D) must be denied. Although Applicant's work was important and helpful in the Bank litigation, Applicant has not carried his burden of demonstrating a "substantial contribution" sufficient to award compensation under Section 503(b)(3)(D).

### B. The 9/11 Medallions Disposition

Applicant asserts that he spent time investigating the commercial reasonableness of the sale of medallions forged from the steel wreckage of the World Trade Center. He contends that the threat of this litigation was instrumental in settling the litigation against the Bank. The UST argues that there is insufficient evidence to determine how much of the monetary settlement can be attributed to this threat. Furthermore, the UST asserts that the Debtor's estate was ably represented by Mr. Stone in pursuing all claims against the Bank. Due to the lack of evidence demonstrating how this work resulted in a substantial contribution to the Debtor's case that would not have occurred without this work, Applicant's Second Amended Application for this compensation is denied.

### C. General Case Work

■ The petitioning creditors filed a motion to convert on March 11, 2005. See

Dckt. No. 197. However, the U.S. Department of Justice also sent a letter to Judge Dalis requesting the enforcement of a previous order that the Debtor had violated and the conversion of the case to one under Chapter 7. *See* Dckt. No. 210 (March 31, 2005). In addition, the petitioning creditors filed an objection to the Debtor's Plan on November 15, 2004. *See* Dckt. No. 151. However, Chase Manhattan Mortgage Corp. filed an earlier objection on October 15, 2004. *See* Dckt. No. 135. Wilma D. Baldwin also filed an earlier objection on November 8, 2004. *See* Dckt. No. 150. Again, there is insufficient evidence before the Court to conclude that Applicant's separate actions in opposing confirmation or moving to convert the case made a substantial contribution to the Debtor's Chapter 11 case. This portion of the Second Amended Application is disallowed.

### D. South Carolina Real Property

■ With regard to the work performed on the South Carolina real property, the UST contends that only the "opportunity" to sell the property has been conferred on the Debtor's estate. The UST asserts that the presence of a church located on the real property makes it difficult to market. As a result, the Chapter 7 Trustee holds property that is difficult to sell, possibly worthless, and may be later abandoned as no sale has yet been made. Furthermore, the UST contends that the petitioning creditors were not authorized to go forward with this matter. However, the evidence includes a December 7, 2004, letter signed by Mr. Stone indicating that he authorized Applicant's hiring of a South Carolina attorney to pursue the quiet title action. Dckt. No. 473, Ex. D (September 29, 2006). In addition, Mr. Stone addressed a February 9, 2005, letter to Applicant stating that "it would appear to me that we need to go forward with the Quiet Title action using the South Carolina lawyer that you had file the lis pendens." *Id.*, Ex. E. Both of these documents precede the conversion date of the Debtor's case to Chapter 7, April 21, 2005.

It is clear from the evidence before the Court that Mr. Stone affirmatively requested or acquiesced in Applicant's efforts to recover the South Carolina real property. Applicant filled the void and took the lead on that particular matter as a result of Mr. Stone's consent or acquiescence. Although the South Carolina property has not yet been sold, Applicant's efforts have brought an asset into the Debtor's estate that is potentially worth up to $100,000.00. Therefore, I find that this is a substantial contribution to the Debtor's estate. However, a creditor may receive compensation for a substantial contribution only in cases arising under Chapters 9 and 11 of the Bankruptcy Code. 11 U.S.C. § 503(b)(3)(D). Therefore, only services by Applicant concerning the South Carolina real property that occurred prior to the conversion date, April 21, 2005, may be compensated pursuant to Section 503(b)(3)(D).

### ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the petitioning creditors' Second Amended Application be GRANTED IN PART and DENIED IN PART. Those portions of the Second Amended Application that seek compensation for Applicant's work on obtaining and securing the South Carolina real property for the benefit of the Debtor's estate are allowed so long as that work occurred while the Debtor's case was in Chapter 11. The remainder of the Second Amended Application is DENIED.

After consultation with Applicant, the Chapter 7 Trustee is directed to present

an order specifying the precise amounts allowed in accordance with this Memorandum and Order.